Arthur MEYER, Plaintiff in Error,

v.

WORLD CONCRETE, INC., Defendant in Error.

No. 41444.

Supreme Court of Oklahoma.

June 6, 1967.

Daniel Bassett, Arthur Meyer, Bartlesville, for plaintiff in error.

Hamilton & Kane, Pawhuska, Gable, Gotwals, Hays, Rubin & Fox, Tulsa, for defendant in error.

DAVISON, Justice.

Arthur Meyer (defendant below) appeals from a judgment rendered against him in favor of World Concrete, Inc., (plaintiff below) for the sum of $21,958.30, with interest and attorney's fees. The parties will be referred to by their trial court designation.

Plaintiff filed suit against the named defendant and one E. J. Armstrong to recover the balance or deficiency due on a lease-purchase contract originally made between Ross Aviation, Inc., (as lessor), and the defendants (as lessees), and subsequently assigned by Ross Aviation to plaintiff. Under the terms of the contract Ross Aviation leased to the defendants a used 1953 Beech C–45H aircraft for a term of 5 years for a total consideration of

$32,500, payable in 60 equal monthly installments, with option to defendants to purchase the aircraft upon payment of the total consideration. The defendants failed to make the payments and pursuant to the provisions of the agreement the aircraft was taken from the defendants and sold for $10,000. Judgment was rendered against E. J. Armstrong and the defendant Arthur Meyer for the balance of deficiency remaining due after giving credit for the $10,000 and the down payment. E. J. Armstrong did not appeal and the judgment against him is final.

Our narration of the facts and circumstances will be limited to those matters necessary to a determination of the propositions of error urged by defendant.

The plaintiff originally owned the Beech aircraft and traded it in on a new plane that plaintiff bought from Ross Aviation, with the understanding that if Ross Aviation sold the Beech aircraft to some party on an installment payment plan, the plaintiff would guarantee that such party would make the installment payments. Ross Aviation later entered into the lease-purchase agreement, supra, with Armstrong and defendant and sold and assigned the same to C.I.T. Corporation with recourse in the event Armstrong and defendant made default. Plaintiff, pursuant to its agreement with Ross Aviation, executed a guaranty to C.I.T. Corporation guaranteeing performance by Armstrong and defendant.

The lease-purchase contract, supra, provides in pertinent part as follows:

"TITLE: Title to the aircraft shall remain in Lessor exclusively until Lessee has paid and performed in full all of its obligations hereunder and has exercised the 'Purchase Option' set forth below according to its terms. * * *"

\* \* \* \* \* \*

"DEFAULT: Time is of the essence, if any rental payment be not made promptly when due * * * all sums due and to become due hereunder shall become immediately due and payable and Lessee agrees to return the aircraft to Lessor or assigns on demand and Lessor or assigns may, to the extent permitted by law, without notice or legal process enter any premises where aircraft may be and take possession of it and retain all prior rental payments as partial compensation for its use * * *

\* \* \* \* \* \*

"This lease is irrevocable for the full term hereof and for the aggregate rental herein reserved, and the rent shall not abate by reason of termination of Lessee's right of possession and/or the taking of possession by Lessor or for any other reason, * * * In case of any default or breach of any warranty, provision, condition or agreement hereof by Lessee hereunder, Lessor may sell the aircraft * * * Any proceeds of sale, received within 60 days after repossession, * * * less Lessor's expenses of taking possession, storage, reconditioning and sale or releasing, shall be applied on the Lessee's obligation hereunder, and Lessee shall remain liable for the balance of the unpaid aggregate rental set forth above. * * *"

As stated, defendant failed to pay the monthly installments, and C.I.T. Corporation re-assigned to Ross Aviation the lease-purchase contract and all rights and remedies thereunder. Thereafter, Ross Aviation took possession of the aircraft and on December 12, 1960, notified defendant by letter that the plane would be sold at public auction on January 2, 1961, at 1 P.M. at Riverside Airport, Tulsa, Oklahoma at the offices of Ross Aviation. It was stipulated that this letter was sent to the defendant by registered mail and that public notice of such sale was given by publication in three newspapers, to-wit: the Tulsa World, the Daily Oklahoman, and the Tulsa Daily Legal News. No copies of such published notice were introduced in evidence. Ross Aviation bid $10,000 and became the purchaser of the plane at the auction sale. The record reflects that plaintiff then acquired the

plane and new instruments were drawn up and executed between plaintiff and C.I.T. Corporation. On March 13, 1961, Ross Aviation assigned to plaintiff the lease-purchase contract and all rights and remedies thereunder. Plaintiff then filed the instant action to collect the balance due on the contract after crediting the down payment recited therein and the $10,000.

It is noted that the transactions herein involved transpired prior to the effective date of the Uniform Commercial Code, Laws 1961, p. 69, Sec. 1–101, 12A O.S. 1961, § 1–101 et seq.

Defendant presents his contention for reversal of the judgment under the single proposition that no valid sale was held.

Defendant contends the auction sale held on January 2, 1961, was invalid because it took place on a legal holiday. Defendant points out that January 1, 1961, fell on Sunday and therefore the following Monday (January 2, 1961) was a holiday.

Our statute, 25 O.S.1961, § 82.1, designates the first day of January as a holiday and provides that if such holiday falls on Sunday, the succeeding Monday shall be a holiday in that year.

In Garner v. Tulsa Building & Loan Ass'n, 131 Okl. 232, 268 P. 722, 58 A.L.R. 1269, we quoted with approval a statement from Corpus Juris which now appears in 40 C.J.S. Holidays § 3, p. 411, as follows:

"* * * A legal holiday other than Sunday has effect as a holiday as to those acts and transactions which are designated in the statute establishing the day, but no others, and accordingly it is held that, with the exception of matters concerning which the statute provides that the day shall be treated as Sunday, and any act done on that day is as effective as though done on any other day. * * *"

The cited § 82.1, supra, has no provision that the first day of January holiday shall be treated as Sunday.

It is our conclusion that the subject auction sale is in this respect valid. Defendant's contention has no merit.

Defendant also contends that the auction sale was invalid because the "Notice of Sale" failed to comply with the requirements of 46 O.S.1961, § 53.

As stated above, the published notice of such sale was not introduced in evidence. Defendant adopts and refers to the letter of December 12, 1960, from Ross Aviation, in which defendant was informed of the date, time and place of the sale, as being the only "notice of sale" produced by plaintiff to show compliance with the statute and thereby establish in part the plaintiff's right to a judgment for the balance due on the lease contract. Said § 53 sets out the information that the notice of sale shall contain in foreclosure of a chattel mortgage by a sale of the mortgaged property. It does not apply to the instant lease-purchase agreement.

In the case of a chattel mortgage the title has passed and vested in the buyer and the chattel mortgage is a lien on the property. The lease-purchase agreement by its terms, supra, expressly reserved title to the aircraft in the lessor exclusively until the defendant lessee had paid and performed in full all obligations therein stipulated, and further provided that the lessor could sell the aircraft and apply the sale proceeds on the defendant lessee's obligations, and lessee would remain liable for the unpaid balance. In Taylor v. Graver Tank & Manufacturing Company, Okl., 344 P.2d 1045, 1047, we quoted with approval as follows:

" 'A conditional sale is one where the property is delivered to the vendee and the purchase price is agreed upon and part of it paid, or none of it paid, but to be paid for in the future, and it being agreed that title does not pass until the full purchase price is paid. Such a contract is a conditional sale, though in the form of a lease. * * *' "

■ It is our conclusion that the lease agreement herein is a conditional sales contract.

■ In Selected Investments Corporation v. Anderson, Okl., 319 P.2d 588, it is stated:

"In a conditional sales contract where title to the property is retained by the seller, the possession of the property, the right to its use and to acquire title thereto is a sufficient consideration to support the promise of a buyer to pay the agreed price, or any deficiency thereof remaining upon the repossession and *resale of the property according to the contract* upon the default of the buyer, and such a provision is not invalid as an attempt to fix damages in anticipation of a breach of the agreement." (emphasis ours)

See also Welles v. Acree Motor Co., 188 Okl. 173, 107 P.2d 175, and Haubelt v. Bryan & Doyle, 171 Okl. 338, 43 P.2d 68, 70.

In Portable Pipe Service Company v. Graham, Okl., 389 P.2d 985, 986, we stated:

"The parties at the time of sale may incorporate in their conditional sales contract any terms, conditions or provisions which are not unlawful or against public policy which are supported by a sufficient consideration, and the courts will not make new contracts for them nor add to nor subtract from their contracts, but will be content to enforce the contract as made by the parties."

In the present case Ross Aviation held the lease-purchase contract prior to and at the time of sale and obviously elected to follow the provisions thereof that permitted sale of the plane and to credit the amount due with the amount the plane was sold for at the sale. It was not required under the contract to publish notice of the sale, but it did this and notified defendant of the time and place of the sale in what appears to be an effort to procure purchasers for the plane. From a practical standpoint the defendant benefited from the sale to the extent of a $10,000 credit.

Defendant's contention that failure to comply with the provisions of 46 O.S.1961, § 53, rendered the sale void has no legal foundation.

Defendant further contends he is the victim of a "scheme" between Ross Aviation and plaintiff whereby they and in particular the plaintiff seek to profit at defendant's expense.

■■ It appears that defendant's argument in support of this contention assumes that Ross Aviation and plaintiff went through motions and engaged in paper transactions on a voluntary basis and not because they were required to do so in order to comply with their obligations and to protect themselves against loss. This assumption ignores the evidence presented by plaintiff and which the trial court believed when it rendered judgment for the plaintiff. Contrary to defendant's argument, the evidence supports the conclusion that plaintiff transferred the Beech aircraft to Ross Aviation when it was traded in on a new aircraft and that Ross Aviation owned the aircraft when defendant signed the lease contract. Ross Aviation assigned the contract to C.I.T. Corporation with recourse and therefore was liable upon default by defendant. Plaintiff, pursuant to its agreement with Ross Aviation, gave its guaranty to C.I.T. that defendant would make the payments, and therefore was liable upon default by defendant. Defendant did default and these several liabilities accrued. The contract and all rights and remedies thereon was re-assigned to Ross Aviation and it then had the right to proceed against defendant on the contract and against plaintiff on the guaranty to avoid loss from the transaction. Ross Aviation was entirely within its rights in proceeding under the contract and plaintiff had the right to protect itself against liability on the guaranty and minimize its loss by re-acquiring the aircraft and taking an assignment of the lease contract from Ross Aviation. We

fail to see in what manner these circumstances reflect a scheme or conspiracy to defraud the defendant.

At this point we make the observation that there is some uncertainty in the testimony as to whether Ross Aviation or the plaintiff was the purchaser at the auction sale. The trial was held four years after that occurred and this may explain this discrepancy. It was stipulated at the pretrial conference that Ross Aviation was the purchaser of the aircraft for $10,000 at the sale and there is testimony to that effect. It appears to us that it would make little difference which bought at the sale since credit was given for the sale and plaintiff admitted the credit when it filed suit on the lease contract.

The trial court found that defendant was not defrauded by Ross Aviation. There is competent evidence to sustain this conclusion.

All the Justices concur.